**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

GEORGE VEAZEY                                                                                                    PLAINTIFF

v.                                              No. 5:05CV080 JLH

ARKANSAS DEPARTMENT OF CORRECTION;
LARRY NORRIS, GRANT HARRIS AND
LARRY HICKS, Individually and as Supervising
Officers of the Arkansas Department of Correction                                         DEFENDANTS

**OPINION AND ORDER**

George Veazey brought claims for wrongful discharge, breach of contract, and violation of his rights under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, and the Arkansas Civil Rights Act[1] after his employment with the Arkansas Department of Correction ("ADC") was terminated. The defendants have moved for summary judgment. For the reasons explained below, this motion is granted.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003). When the

---

[1] ARK. CODE ANN. § 16-123-101 *et seq.*

moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)).  The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.  In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment.  *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).  If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim.  *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

**I.**

A.  **Veazey's Alcohol-Related Disciplinary Actions**

Veazey, a white male, began working for the ADC as a correctional officer in 1983. On May 22, 1998, Veazey tested positive for alcohol while on duty at Jefferson County Jail and Correctional Facility, which is operated by the ADC. Veazey was charged with violating the ADC's policy against reporting for work under the influence of alcohol and consequently suspended without pay for 30 days, placed on probation for 18 months, and referred to the Employee Assistance Program.

At a security meeting on July 14, 2000, Major Tommy Hurst of the ADC advised a group of employees that they should not have alcoholic beverages in ice chests inside or outside of their vehicles while on state property and that there would be "zero tolerance" for employees found in possession of alcohol on state property. Veazey was present at this meeting. Veazey's immediate supervisor, Captain Larry Hicks, testified in his deposition that the warden of the Jefferson County Jail, Grant Harris, consistently applied this policy to all employees from that time forward and that some ADC employees were terminated for violating it.

At the end of Veazey's shift on August 9, 2000, Veazey approached an ADC lieutenant in the parking lot of the Jefferson County Jail and asked him if he wanted a beer. The defendants assert that Veazey also drank a beer in the parking lot that afternoon while still in uniform. Veazey now denies drinking a beer while still in the parking lot. In his deposition, Veazey testified, "I can't remember when I specifically opened it. I don't think I did it in the parking lot, though." Veazey admits, however, that he offered a beer to the lieutenant. He testified in his deposition that he had

gotten the beer out of his ice chest, that he possessed the beer on state property, and that he was aware at the time that this was against ADC policy.

Veazey was disciplined for bringing contraband onto state property in violation of ADC policy. Veazey was originally given a 30-day suspension and a 12-month probation period, but he appealed this decision to ADC Director Larry Norris, who modified the discipline to a written reprimand and a 6-month probation period.

One year later, in August 2001, Veazey was again found to have violated ADC policy, which provides that "employees shall not consume intoxicating beverages while on duty" or "appear for duty or be on duty while under the influence of intoxicants." For this violation, Veazey was suspended for 30 days, placed on probation for 12 months, and referred to the Employee Assistance Program. In a memorandum from Harris to Veazey, Harris informed Veazey of this disciplinary action. Harris further wrote, "Understand also Sergeant Veazey that I am giving you a direct order never to possess alcoholic beverages while on state property in your vehicle, on you[r] person, or consume alcoholic beverages while on state property. Failure to abide by this order will result in your immediate termination."

On December 11, 2003, the ADC conducted a search of all vehicles coming to the Jefferson County Jail, including employee vehicles. The purpose of this search was to prevent any contraband, including alcohol, from entering ADC property. ADC personnel searched Veazey's truck that day and found two beers iced down in an ice chest and a half-gallon of whiskey in the cab. The parties disagree, however, as to whether Veazey's truck had entered ADC property at the time. The defendants contend that Veazey was on state property, while Veazey maintains that the search occurred on the street leading to the parking lot. Thus, Veazey contends, he did not actually bring

the alcohol onto ADC property that day. Veazey testified in his deposition, however, that he was on his way to work and that he would have continued onto state property with the alcohol in his possession had he not been stopped for the "shakedown."

**B.     Veazey's Termination**

Hicks recommended that an Employee Review Committee ("ERC") be held on Veazey for this incident. In the memorandum recommending this proceeding, Hicks stated that Veazey was in violation of Administrative Directive ("AD") 00-10 Section 1(e) Possession of Contraband and Section 10(b) Possession, use, sale or distribution of alcoholic beverages while on duty. Veazey was informed of the time and date of the ERC and of the two policies that Hicks had charged him with violating.

On December 23, 2003, the chairman of the ERC sent a memorandum to Veazey regarding the ERC's meeting. This memo stated that Veazey told the committee that he had forgotten that he had alcohol in his vehicle. The memo also referred to Veazey's previous alcohol-related disciplinary actions and Harris's August 20, 2001, letter ordering Veazey to "never possess alcoholic beverages while on state property" in his vehicle or on his person. The ERC found Veazey guilty of violation of AD 00-10 Section 1(e) Possession of Contraband, but not guilty of violation of Section 10(b) Possession, use, sale or distribution of alcoholic beverages while on duty. The committee included an additional violation, however, Section 17(b) Deliberate refusal to carry out reasonable work requests and/or instructions. Harris terminated Veazey's employment on January 8, 2004.

Veazey grieved Harris's termination decision to Norris according to ADC policy on January 14. Norris elected to use an Internal Review Committee ("IRC") to hear the grievance. The IRC conducted a hearing on Veazey's grievance and upheld his termination. Norris wrote Veazey

on February 12 to inform Veazey that he had decided to uphold Harris's termination decision based upon the recommendation of the IRC and the documentation concerning Veazey's termination. Norris cited as evidence Veazey's previous alcohol-related disciplinary actions and his admission that he had alcohol in his vehicle on the day of the "shakedown" after Harris's direct order prohibiting the possession of alcohol on state property.

Veazey appealed Norris's decision and requested a hearing before the State Employee Grievance Appeal Panel. The panel heard Veazey's grievance appeal on March 24. Veazey was present on his own behalf, and Harris was present on behalf of the ADC. After hearing testimony, the panel unanimously affirmed the decision to terminate Veazey in an order issued on March 31.

Harris's January 8 termination letter, Norris's February 12 letter upholding the termination, and the panel's March 31 order all cited Veazey's violations of AD 00-10 Section 1(e) Possession of Contraband and Section 17(b) Deliberate refusal to carry out reasonable work requests and/or instructions. None referred to AD 00-10 Section 10(b) Possession, use, sale or distribution of alcoholic beverages while on duty.

**C.   Arkansas Department of Correction Policies and Procedures**

The ADC Employee Handbook provides in pertinent part:

**Initial Probationary Period –** Initial employment includes a one-year probationary period. This probationary period is established as a time for the Department to evaluate and help employees adjust to their new positions. Employees who cannot adjust may be terminated without prejudice during the initial probationary period. With written notification, this initial probationary period may be extended by the Warden/Administrator. At any time during the initial probationary period, an employee may be separated from an agency without the right of appeal or hearing. The reason given for the dismissal shall be submitted in writing to the Unit Human Resource Manager, the employee being dismissed, and Human Resources.

* * *

**Personal Searches of Person or Property –** When it is deemed necessary to search the person or belongings of an employee on state property, such search shall be conducted with authority from the Warden/Administrator. Refusal by an employee to be searched will be grounds for disciplinary action. The right of search is a condition of employment with the Arkansas Department of Correction to ensure the protection of inmates and employees.

Contraband is defined as any article not officially issued or purchased through departmental channels or any article brought into an institution or departmental work location other than through proper channels. Employees who take contraband onto state property or into state institutions may be subject to disciplinary action and/or criminal prosecution. Employees may not, without the authority of the Warden/Administrator, introduce into an institution or workstation under the jurisdiction of the Department any alcohol, narcotic drug, tobacco, article, or any letter or message intended to be received by an inmate.

* * *

**Drug-Free Workplace –** For the safety of our co-workers, inmates and the public we serve, employees must maintain a drug-free workplace. Unlawful manufacturing, distribution, dispensing, possessing, using or being under the influence of a controlled substance or alcohol in the workplace at the Department of Correction is prohibited and may subject the employee to disciplinary action and/or criminal prosecution. Drug testing will be required of employees and/or applicants pursuant to the current policy.

* * *

**Voluntary Resignation –** Notice of an employee's intent to resign should be made known to the employee's immediate supervisor in writing at least two weeks prior to the employee's last working day. If a two-week notice is not possible, a written explanation should be made and submitted with written resignation notice. An employee's failure to give advance notice will be indicated by the supervisor on the termination form, which is filed in the resigning employee's personnel record and may result in a negative rehire recommendation.

**Involuntary Termination –** All formal disciplinary action(s) are progressive except when action(s) adversely affect security and the good order of departmental operations. In those situations, progressive disciplinary actions are unnecessary. Progressive disciplinary steps include oral notice, written notice, suspension and discharge.

Prior to discharging any employee, a hearing will be granted to the employee to afford him/her an opportunity to present rebuttal of the case. If, after the hearing, discharge is still in order, the employee will be advised in writing of the decision and the reasons for it. An employee discharged by the Department may, within five days of termination, submit in writing to the Departmental Grievance Officer a complaint

of the discharge. The complaint will be processed in accordance with the Uniform Grievance Procedure.

AD 00-10 provides in pertinent part:

## I. **POLICY:**

It is the policy of the Department of Correction to ensure that all employee discipline be administered in a consistent, objective and good-faith manner.

Nothing in these guidelines and procedures limits the Director's authority to establish or revise human resource policies. These guidelines and procedures are adopted to guide the internal operations of the Department and do not create any legally enforceable interest or limit the Director or his designee's authority to terminate any employee at will.

## II. **EXPLANATION:**

The purpose of the ADC Employee Conduct Standards policy is to establish consistent employee conduct standards and discipline. Nothing herein is intended to imply that the standards are all inclusive. The conduct standards are intended to identify common problems associated with employee conduct. Discipline should be through positive progressive actions, where appropriate.

In those situations where an employee's actions adversely affect the security and good order of departmental operations, progressive disciplinary actions are not required. Progressive discipline does not apply to employees during their initial probation.

AD 00-10 further provides a list of "Violations and Prohibited Conduct," including the violations for which Veazey was disciplined and ultimately terminated. This section of the document states, however, that "[t]hese standards do not list every behavior unacceptable to the Department."

## II.

### A. **Veazey's Federal-Law Claims**

Forty-two U.S.C. § 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Pursuant to

this law, Veazey seeks redress for alleged violation of his rights as secured by the Fourteenth Amendment and 42 U.S.C. § 1981.

### 1. Fourteenth Amendment

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property[] without due process of law" or "deny to any person . . . the equal protection of the laws." Veazey asserts that the defendants, in terminating his employment, violated both his right to equal protection and his right to due process.

#### (a) Equal Protection

"The Equal Protection Clause requires the government treat all similarly situated people alike." *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). The threshold inquiry in an equal protection claim is whether the plaintiff has established that he was treated differently from others similarly situated. *Id.* "To establish an equal protection violation, [the plaintiff] must identify a class of similarly situated persons who are treated dissimilarly." *Geach v Chertoff*, 444 F.3d 940, 945 (8th Cir. 2006). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." *Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The defendants point to the deposition testimony of Hicks, who stated that Harris was consistent in enforcing the ADC's "zero-tolerance" policy against drugs and alcohol and that other employees were terminated for violating it. Although Veazey contends that other officers violated the policy on alcohol and were not terminated, he has produced no admissible evidence to support this contention.

Veazey testified in his deposition that he thought that another ADC employee, Sergeant Robert Conner, had been found with one or two "12-packs in his truck" and was given only a written warning. Veazey stated, however, that he was aware of this alleged incident only because another officer told him about it. Veazey did not know whether the other officer was present during the alleged incident with Conner or whether Conner had any previous alcohol-related disciplinary problems. Veazey has presented no testimony or other evidence as to any other ADC employees with alcohol-related disciplinary problems.

To survive a motion for summary judgment, a party must offer evidence that would be admissible at trial. *See Pink Supply Corp. v. Hiebert, Inc.*, 612 F. Supp. 1334, 1338 (D. Minn. 1985) ("[I]n ruling on a summary judgment motion, the Court should consider only evidence that will be admissible at trial."). Veazey's testimony that another officer told him that Conner was caught with alcohol in his vehicle is inadmissible hearsay. *See* FED. R. EVID. 801(c), 802. Even assuming that Veazey's allegation against Conner is true, Veazey testified that he did not know whether Conner had any previous violations and that the incident may have been Conner's first. Conner cannot be said to be "similarly situated" to Veazey unless he, like Veazey, incurred multiple alcohol-related disciplinary actions over a period of years. Veazey has presented no evidence that this was the case.

The defendants have established a *prima facie* case of entitlement to summary judgment as to this issue, and Veazey has responded with only bald allegations of unequal treatment. Veazey's claim for violation of his right to equal protection is therefore dismissed. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (to withstand a motion for summary judgment, the nonmoving party cannot rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial).

**(b)     Due Process**

"The possession of a protected life, liberty, or property interest is a condition precedent to invoking the government's obligation to provide due process of law." *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). "Property interests are not created by the Constitution but rather stem from an independent source such as state law." *Id*.

> In Arkansas, the general rule is that an employer or an employee may terminate an employment relationship at will. *See Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991); *Gladden v. Arkansas Children's Hospital*, 292 Ark. 130, 728 S.W.2d 501 (1987). There are two basic exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains *an express agreement* against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term. *Gladden*, 292 Ark. at 136, 728 S.W.2d 501.

*Ball v. Ark. Dep't of Cmty. Punishment*, 340 Ark. 424, 429-30, 10 S.W.3d 873, 876 (2000). One other narrow exception to the at-will doctrine provides that an employee has a cause of action for wrongful discharge if he is fired in violation for a well-established public policy of the state founded in its constitution or statutes. *Id.* at 430, 10 S.W.3d at 877. An at-will employee may be "fired for any reason, no reason, or even a morally wrong reason." *Id.*

Veazey does not contend that he had an employment agreement with the ADC containing a provision that he would not be discharged except for cause or that his termination violated a well-established public policy of Arkansas. Veazey relies instead upon the ADC Employee Handbook and AD 00-10. These documents, however, do not contain an express agreement against termination except for cause.

The ADC Employee Handbook provides for an initial probationary period for employees during which they "may be terminated without prejudice . . . . without the right of appeal or hearing."

The handbook further provides for "involuntary termination" of employees.  This section provides that progressive disciplinary action, including oral notice, written notice, suspension and discharge, will be used except when an employee's actions affect the security and good order of the department.  The section also provides that an employee will be granted a hearing prior to discharge.

These provisions do not expressly state that an employee may be fired only for good cause.  Even if one could read these provisions to imply that an employee will be terminated only for cause, an "implied provision" against the employer's right to discharge is insufficient to invoke the exception to the at-will doctrine.  *Ball*, 340 Ark. at 430, 10 S.W.3d at 876-77.  Moreover, AD 00-10 expressly states that its "guidelines and procedures are adopted to guide the internal operations of the Department and *do not create any legally enforceable interest or limit the Director or his designee's authority to terminate any employee at will*."  (Emphasis added.)

Veazey has failed to establish that he had a protected property interest in his employment at ADC, as the evidence shows that he was an at-will employee under Arkansas law.  *Cf. Allen v. City of Pocahontas, Ark.*, 340 F.3d 551, 555 (8th Cir. 2003); *Eddings v. City of Hot Springs, Ark.*, 323 F.3d 596, 601 (8th Cir. 2003).  Because Veazey has failed to meet this threshold requirement, his due process claim fails as a matter of law.  Furthermore, the undisputed facts show that the ADC accorded Veazey due process and did not violate any substantive due process rights when it discharged him.

    **2.**    **42 U.S.C. § 1981**

Forty-two U.S.C. § 1981 provides that all persons "shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  The

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), applies to motions for summary judgment in cases arising under § 1981 where, as in this case, there is no direct evidence of discrimination. *Harris v. Hays*, 452 F.3d 714, 717 (8th Cir. 2006); *Johnson v. AT&T Corp.*, 422 F.3d 756, 761 (2005). To establish a *prima facie* case of race discrimination under *McDonnell Douglas*, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of lawful discrimination. *Johnson*, 422 F.3d at 761.

Veazey states in his complaint that he is a white male. He has therefore failed to establish the first element necessary for a *prima facie* case of race discrimination, as he is not a member of a protected class under § 1981.

The Court recognizes that § 1981 will support a claim of reverse discrimination. *Davis v. Halpern*, 768 F. Supp. 968, 983 (E.D.N.Y. 1991) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295-96, 96 S. Ct. 2574, 2585-86, 49 L. Ed. 2d 493 (1976)). In reverse race-discrimination cases, however, the Eighth Circuit also requires that the *prima facie* case "include a showing 'that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004) (quotation omitted). Veazey neither alleges nor offers any evidence that he was discharged because he is white or that the ADC discriminates against white employees. Even taking as true Veazey's allegation that Conner, another ADC employee, violated the ADC's alcohol policy and was not fired, Veazey has produced no evidence that Conner is a member of a different race than Veazey or that race played any role in this situation.

**B.      Veazey's State-Law Claims**

Veazey's claims for breach of contract, wrongful discharge, and violation of his rights under the Arkansas Civil Rights Act are all claims arising under state law. When a federal district court has dismissed all of a plaintiff's claims arising under federal law, the court may decline to exercise supplemental jurisdiction over any remaining state-law claims. 28 U.S.C. § 1367(c)(3). Because all of Veazey's federal claims are dismissed, as explained above, the Court declines to exercise jurisdiction over his remaining claims.

## CONCLUSION

Although certain facts are in dispute in this case, none is material to the outcome of any of Veazey's federal claims and the defendants are entitled to judgment as a matter of law. Veazey's claims arising under the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983 are therefore dismissed with prejudice. Because the Court declines to exercise supplemental jurisdiction over Veazey's state-law claims, these claims are dismissed without prejudice. The defendants' motion for summary judgment (Document #24) is GRANTED.

IT IS SO ORDERED this 28th day of September, 2006.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE